Samuel R. Randall (No. 024517)
**RANDALL LAW PLLC**
4742 North 24th Street, Suite 300
Phoenix, Arizona 85016
Telephone:　602.328.0262
Facsimile:　602.926.1479
Email:　　　srandall@randallslaw.com

Michael A. Josephson (*pro hac vice forthcoming*)
Andrew W. Dunlap (*pro hac vice forthcoming*)
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Telephone:　713.352.1100
Facsimile:　713.352.3300
Emails:　　　mjosephson@mybackwages.com
　　　　　　adunlap@mybackwages.com

Richard J. (Rex) Burch (*pro hac vice forthcoming*)
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Telephone:　713.877.8788
Email:　　　rburch@brucknerburch.com

**ATTORNEYS FOR SIEVERTSEN AND THE MINERS**

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA
## PHOENIX DIVISION

| | |
|---|---|
| Gregory Sievertsen, Individually and for Others Similarly Situated, | Case No. _____ |
| Plaintiff, | **ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT FOR DAMAGES** |
| v. | |
| Freeport-McMoRan Inc., a Delaware corporation, | **(1) Failure to Pay Overtime Wages (Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*);** |
| Defendant. | |

**(2) Failure to Pay Overtime Under Colorado Law (C.R.S. §§ 8-4-101, et seq.);**

**(3) Failure to Pay Earned Wages Under Colorado Law (C.R.S. §§ 8-4-101, et seq.);**

**(4) Failure to Pay Minimum Wages Under Colorado Law (C.R.S. §§ 8-6-101, et seq.);**

**(5) Civil Theft of Wages Under Colorado Law (C.R.S. §§ 8-6-116 and 8-4-401).**

**(Jury Trial Demanded)**

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### Summary

1.    Gregory Sievertsen (Sievertsen) brings this class and collective action to recover unpaid wages and other damages from Freeport-McMoRan Inc. (Freeport) for violations of the Fair Labor Standards Act (FLSA), the Colorado Minimum Wage Act, C.R.S. § 8-6-101, *et seq.* (CMWA), the Colorado Wage Claim Act, C.R.S. § 8-4-101, *et seq.* (CWCA), and their implementing regulations, *see, e.g.*, 7 Colo. Code Regs. § 1103-1 (COMPS Orders).

2.    Freeport employed Sievertsen as one of its Miners (defined below) in its Henderson Mine in Clear Creek County, Colorado.

3.    Freeport pays Sievertsen and its other Miners on an hourly basis.

4.    Sievertsen and the other Miners regularly work more than 40 hours a workweek.

5.    However, Freeport does not pay Sievertsen and its other Miners for all their hours worked, including overtime hours.

6.    Rather, Freeport requires Sievertsen and its other Miners to gather tools and equipment necessary to perform their job duties, suit out in protective clothing and safety gear necessary to safely perform their job duties, attend daily meetings, while on Freeport's premises, walk to the mine entrance, and be ready to work at the mine entrance at the start of their scheduled shifts.

7.    Likewise, Freeport requires Sievertsen and its other Miners to exit the mine, walk to their changing facility, wash-up, change out of their safety gear and protective clothing, store their tools and equipment, and draft daily reports after the end of their scheduled shifts, on Freeport's premises (¶¶ 6-7 together, Freeport's pre/post shift off the clock policy).

8.    But Freeport does not pay Sievertsen and its other Miners for the time they spend donning and doffing their safety gear and protective clothing, attending meetings, gathering and storing their tools and equipment, washing-up, and submitting reports "off the clock," before and after their scheduled shifts.

9.    Freeport's uniform pre/post shift off the clock policy violates the FLSA and CMWA by depriving Sievertsen and the other Miners of overtime wages for all overtime hours worked.

10.    Likewise, Freeport's uniform pre/post shift off the clock policy violates the CWCA by depriving Sievertsen and the other Miners of earned wages for all hours worked on their regular paydays and/or following the termination of their employment.

11.     Additionally, Freeport does not provide, authorize, or permit Sievertsen and the other Colorado Miners to receive bona fide rest breaks.

12.     And Freeport does not provide Sievertsen and the other Colorado Miners compensation for the rest breaks it fails to provide.

## Jurisdiction & Venue

13.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA, 29 U.S.C. § 216(b).

14.     This Court has supplemental jurisdiction of the state-law claims because they arise from a common nucleus of operative facts. *See* 28 U.S.C. § 1367.

15.     This Court has general personal jurisdiction over Freeport because Freeport maintains its principal place of business in Phoenix, Arizona.

16.     Venue is proper because Freeport is headquartered in Phoenix, Arizona, which is in this District and Division. *See* 28 U.S.C. § 1391(b).

17.     Sievertsen has not entered into any arbitration agreement with Freeport affecting any of the allegations contained in this complaint.

## Parties

18.     Sievertsen worked for Freeport as a Miner in Freeport's Henderson Mine in Clear Creek County, Colorado from approximately February 2021 through May 2022.

19.     Throughout his employment, Freeport classified Sievertsen as non-exempt and paid him on an hourly basis.

20.     Throughout his employment, Freeport subjected Sievertsen to its uniform, illegal pre/post shift off the clock policy.

21.     Sievertsen's written consent is attached as **Exhibit 1**.

22.     Sievertsen brings this class and collective action on behalf of himself and other similarly situated Freeport employees who were subject to Freeport's uniform, illegal pre/post shift "off the clock" policy.

23.     Freeport uniformly prohibits these employees from correctly recording their hours worked on Freeport's premises through its uniform, illegal pre/post shift off the clock policy.

24.     Each of these employees are regularly forced to work "off the clock" and without compensation, on Freeport's premises, donning/doffing their safety gear and protective clothing, gathering and storing their tools and equipment, attending meetings, washing-up, and submitting reports before and after their scheduled shifts.

25.     Thus, Freeport uniformly deprives these employees of overtime wages for all overtime hours worked in violation of the FLSA and CMWA.

26.     The FLSA collective of similarly situated employees is defined as:

> **All hourly Miners who worked for or on behalf of Freeport during the past 3 years through final resolution of this action ("FLSA Collective Members").**

27.     Sievertsen also seeks to represent a class under the CMWA and CWCA pursuant to FED. R. CIV. P. 23.

28.     The Colorado Class of similarly situated employees is defined as:

> **All hourly Miners who worked for or on behalf of Freeport in Colorado during the past 6 years through final resolution of this action ("Colorado Class Members").**

29.     The FLSA Collective Members and Colorado Class Members are collectively referred to as the "Miners."

30.     The Miners can be readily ascertained from Freeport's business and personnel records.

31.     Freeport is a Delaware corporation headquartered in Phoenix, Arizona.

32.     Freeport may be served with process by serving its its registered agent: **Registered Agent Solutions, Inc., 300 W Clarendon Ave., Suite 240, Phoenix, AZ 85013**.

## FLSA COVERAGE

33.     At all relevant times, Freeport has been an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

34.     At all relevant times, Freeport has been an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

35.     At all relevant times, Freeport has been an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as cast irons, steel, tools, alloys, powders, lubricants, etc.—that have been moved in or produced for commerce.

36.     At all relevant times, Freeport has had an annual gross volume of revenue made or business done of over $1,000,000 each year.

37.     At all relevant times, Sievertsen and the other Miners have been Freeport's "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

38.     At all relevant times, Sievertsen and the other Miners have been engaged in commerce or in the production of goods for commerce.

39.     Freeport uniformly subjects Sievertsen and its other Miners to its illegal pre/post shift off the clock policy.

40.     Freeport imposed its illegal pre/post shift off the clock policy on its Miners regardless of any alleged individualized factors, such as specific job title or geographic location.

41.     By subjecting Sievertsen and its other Miners to its pre/post shift off the clock policy, Freeport did not pay them overtime for all the hours they worked in excess of 40 a workweek.

42.     Freeport's uniform pre/post shift off the clock policy therefore violates the FLSA. 29 U.S.C. § 207(a) & (e).

**Facts**

43.     Freeport bills itself as "a leading international metals company . . . operat[ing] large, long-lived geographically diverse assets with significant proven and probable reserves of copper, gold and molybdenum."[1]

44.     To meet these business objectives, Freeport hires workers, like Sievertsen and the other Miners.

45.     While exact job titles and precise job duties may differ, Sievertsen and the other Miners are all subject to Freeport's same or similar illegal policy – its illegal pre/post shift off the clock policy – while performing the same or similar work.

---

[1] https://www.fcx.com/about (last visited July 15, 2024)

46.     Freeport likewise failed to authorize and/or permit rest breaks and/or provide compensation for missed rest breaks to the Colorado Class Members.

47.     For example, Sievertsen worked for Freeport as a Miner in Freeport's Henderson Mine in Clear Creek County, Colorado from approximately February 2021 through May 2022, as evidenced by his Welcome Letter from Freeport's Human Resources:

From: **Freeport-McMoRan Human Resources** noreply@sapsf.com
Subject: **Welcome Letter**
Date: **Feb 12, 2021 at 8:39:25 AM**
To: siever1.gs@gmail.com

**FREEPORT-MCMORAN**

Dear Gregory Sievertsen,

Welcome to Freeport-McMoRan! We are glad you decided to join our company and we're looking forward to your first day with us.

To help you settle in to your new role quickly, below is additional information about our company and the onboarding paperwork you soon will receive.

Freeport-McMoRan is a large and geographically diverse company with approximately 30,000 employees working at sites around the world, including Indonesia, North America, South America and Europe.

48.     As a Miner, Sievertsen's job duties included prepping, setting, and "shooting" explosives in drifts within the mine to facilitate molybdenum extraction.

49.     Sievertsen's job duties likewise included donning and doffing his safety gear and protective clothing, gathering and storing his tools and equipment, attending meetings, washing-up, and submitting daily operations reports, on Freeport's premises, before and after his scheduled shifts.

50.     Throughout his employment, Freeport classified Sievertsen as a non-exempt employee and paid him on an hourly basis.

51.    Indeed, Freeport agreed to pay Sievertsen approximately $31.60 to $38.80 an hour.

52.    Throughout his employment, Freeport required Sievertsen to record his "on the clock" hours worked by scanning his employee badge through Freeport's designated time tracking system.

53.    Sievertsen worked a 4 day on 2 day off then 4 day on 5 day off rotating schedule.

54.    Throughout his employment, Sievertsen typically worked approximately 14 hours a day for 4-5 days a workweek (56 to 70+ hours a workweek).

55.    But throughout his employment, Freeport did not pay Sievertsen for all his hours worked.

56.    Instead, throughout his employment, Freeport subjected Sievertsen to its uniform, illegal pre/post shift off the clock policy.

57.    Specifically, Freeport required Sievertsen to dress out in his protective clothing and safety gear (including hard hat, head lamp, reflective coveralls, ear plugs, steel toed boots, safety glasses, gloves, rescuer and airstream respirator, tracker, mining belt), gather tools and equipment (including tool bag, crescent wrenches, channel lock pliers, hammers, plastic and metal knives, and screwdrivers) fundamentally necessary to performing his job as a Miner, walk to the mine entrance, join a pre-shift operations and safety meeting, and to be ready to work at the mine prior to his scheduled shift, all "off the clock," and without compensation.

58.    This took Sievertsen approximately one hour each workday.

59.     Sievertsen could not perform his job duties as a Miner in accordance with Freeport's policies, procedures, and expectations without this protective clothing, safety gear, tools, and equipment.

60.     Sievertsen could not safely perform his job duties as a Miner in accordance with Freeport's policies, procedures, and expectations without this protective clothing, safety gear, tools, and equipment.

61.     Indeed, much of the safety gear Sievertsen must utilize is mandated by federal regulation. *See* 29 C.F.R. § 1910.132.

62.     The donning of protective clothing and safety gear and gathering of tools and equipment are therefore integral and indispensable work duties for Sievertsen.

63.     Likewise, Freeport required Sievertsen to remove his safety gear and protective clothing, store his tools and equipment, wash up, and submit his daily work report each day after exiting the mine at the end of his scheduled shift, all "off the clock" and without compensation.

64.     This took Sievertsen approximately 1 hour each workday.

65.     Sievertsen could not perform his job duties as a Miner in accordance with Freeport's policies, procedures, and expectations without removing his safety gear and protective clothing, storing his tools and equipment, washing up, and submitting his daily report each workday.

66.     Sievertsen could not safely perform his job duties as a Miner in accordance with Freeport's policies, procedures, and expectations without removing his safety gear and protective clothing, storing his tools and equipment, and washing up each day.

67. The removal of his safety gear and protective clothing, storing his tools and equipment, washing up, and submitting his report each day are therefore integral and indispensable work duties for Sievertsen.

68. But under its pre/post shift off the clock policy, Freeport did not compensate Sievertsen for the same.

69. Thus, because of its illegal pre/post shift off the clock policy, Freeport failed to pay Sievertsen overtime wages for all his overtime hours worked in violation of the FLSA and CMWA.

70. And Freeport failed to pay Sievertsen all his earned wages on his scheduled paydays and/or upon termination of employment in violation of the CWCA.

71. Similarly, Freeport did not authorize or permit Sievertsen to take bona fide 10-minute rest breaks for every 4 hours worked or major fraction thereof, in violation of Colorado law. *See* 7 C.C.R. 1103-1 (5.2).

72. Thus, Sievertsen routinely spent his "rest breaks" on-duty and performing his normal work duties.

73. And Freeport failed to compensate Sievertsen for his missed rest breaks, in violation of Colorado law.

74. Sievertsen and the other Miners perform their jobs under Freeport's supervision and use materials, equipment, and technology Freeport approves and supplies.

75. Freeport requires Sievertsen and its other Miners to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

76. At the end of each pay period, Sievertsen and the other Miners receive wages from Freeport that are determined by common systems and methods that Freeport selects and controls.

77. But, just as with Sievertsen, Freeport fails to pay its other Miners for all their hours worked.

78. Indeed, Freeport uniformly subjects its other Miners to the same or similar illegal pre/post shift off the clock policy it imposed on Sievertsen.

79. Specifically, just as with Sievertsen, Freeport requires them to dress out in their protective clothing and safety gear (including hard hat, head lamp, reflective coveralls, ear plugs, steel toed boots, safety glasses, gloves, SCSR, airstream respirator, tracker, mining belt), gather tools and equipment (including tool bag, crescent wrenches, channel lock pliers, hammers, plastic and metal knives, and screwdrivers) fundamentally necessary to performing their jobs as Miners, walk to the mine entrance, attend an operations and safety meeting, and be ready to work at the mine entrance prior to their scheduled shifts, all "off the clock" and without compensation.

80. And Freeport requires them to exit the mine, walk to the changing facility, remove their safety gear and protective clothing, store their tools and equipment, wash up, and submit daily reports each day after their scheduled shifts, all "off the clock" and without compensation.

81. And like Sievertsen, much of the safety gear they must utilize is mandated by federal regulation. *See* 29 C.F.R. § 1910.132.

82.    But, like Sievertsen, the other Miners are regularly forced to perform this compensable work "off the clock" before and/or after their scheduled shifts for Freeport's predominant benefit.

83.    And, just as with Sievertsen, Freeport does not pay its other Miners for this work they perform "off the clock" before and after their scheduled shifts, before and after entering and exiting the mine.

84.    And, just as with Sievertsen, these job duties take the other Miners approximately 2 hours to complete each workday.

85.    Freeport fails to exercise its duty as Sievertsen's and the other Miners' employer to ensure these employees are not performing work "off the clock" on its premises that Freeport does not want performed.

86.    And Freeport knows, should know, or recklessly disregards whether Sievertsen and its other Miners routinely perform work "off the clock," and without compensation, before and after their scheduled shifts.

87.    Thus, Freeport requests, suffers, permits, or allows Sievertsen and its other Miners to work "off the clock," without compensation, before and after their scheduled shifts.

88.    Despite accepting the benefits, Freeport does not pay Sievertsen and its other Miners for the compensable work they perform "off the clock" before and after their scheduled shifts.

89.    Thus, under Freeport's uniform, illegal pre/post shift off the clock policy, Sievertsen and the other Miners are denied overtime pay for the compensable work they

perform "off the clock" before and after their scheduled shifts during workweeks in which they work more than 40 hours in violation of the FLSA and CMWA.

90.    And under Freeport's uniform, illegal pre/post shift off the clock policy, Sievertsen and the other Miners are denied earned wages under the CWCA.

91.    And, just as with Sievertsen, Freeport did not authorize or permit the other Colorado Class Members to take bona fide 10-minute rest periods for every 4 hours worked or major fraction thereof.

92.    Freeport failed to compensate Sievertsen and the other Colorado Class Members for their missed rest breaks.

93.    This unpaid work is compensable under Colorado law because Freeport knew, or should have known, that: (1) the Miners were performing unpaid work during their "rest breaks"; (2) they were interrupted or subject to interruptions with work duties during any attempted "rest break"; (3) they were not completely relieved of all duties during their "rest breaks"; (4) they entirely skipped their "rest breaks" due to work demands; and/or (5) they were not free to engage in personal activities during their "rest breaks" because of constant work interruptions.

94.    Thus, the other Colorado Class Members routinely spend their "rest breaks" on duty and performing work.

95.    And Freeport knows Sievertsen and the other Colorado Class Members regularly work during their and "rest breaks."

96.    Despite accepting the benefits, Freeport does not compensate Sievertsen and its other Colorado Class Members for their missed "rest breaks."

1

## CLASS & COLLECTIVE ACTION ALLEGATIONS

2

97.    Sievertsen incorporates all other paragraphs by reference.

3

4

98.    Sievertsen brings his claims as a class and collective action under Section 216(b)

5

of the FLSA and Fed. R. Civ. P. 23.

6

99.    Like Sievertsen, the other Miners are victimized by Freeport's illegal pre/post

7

shift off the clock policy.

8

9

100.    Other Miners worked with Sievertsen and indicated they were paid in the same

10

manner, performed similar work, and were subject to Freeport's same illegal pre/post shift

11

off the clock policy.

12

101.    Other Colorado Class Members worked with Sievertsen and indicated they

13

14

were paid in the same manner, performed similar work, and Freeport did not authorize or

15

permit them to take required rest breaks.

16

102.    Based on his experience with Freeport, Sievertsen is aware Freeport's illegal

17

pre/post shift off the clock policy was imposed on the other Miners.

18

19

103.    Based on his experience with Freeport, Sievertsen is aware Freeport's failure

20

to authorize and/or permit required rest breaks or compensate missed rest breaks was

21

imposed on the other Colorado Class Members.

22

104.    The Miners are similarly situated in the most relevant respects.

23

24

105.    Even if their precise job duties and locations might vary, these differences do

25

not matter for the purposes of determining their entitlement to overtime.

26

106.    Rather, the Putative Classes are held together by Freeport's pre/post shift off

27

the clock policy and failure to authorize and/or permit required rest breaks, which

28

systematically deprives Sievertsen and the Miners of proper wages, including required overtime wages, for all hours worked, including those in excess of 40 hours in a workweek.

107.    Therefore, the specific job titles or precise job locations of the Miners do not prevent class or collective treatment.

108.    Freeport's failure to pay these employees "straight time" and overtime wages at the rates required by the FLSA, CMWA, and/or CWCA results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Miners.

109.    The Miners are denied overtime wages at the required premium rate for all overtime hours worked when they work more than 40 hours in a workweek.

110.    Freeport's records show the number of hours the Miners worked "on the clock" each workweek.

111.    The back wages owed to Sievertsen, and the other Miners can therefore be calculated using the same formula applied to the same records.

112.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Freeport's records, and there is no detraction from the common nucleus of liability facts.

113.    Therefore, the issue of damages does not preclude class or collective treatment.

114.    Sievertsen's experiences are therefore typical of the experiences of the other Miners.

115.    Sievertsen has no interest contrary to or in conflict with, the other Miners that would prevent class or collective treatment.

116.    Like each Miner, Sievertsen has an interest in obtaining the unpaid wages owed under federal and Colorado law.

117.    Sievertsen and his counsel will fairly and adequately protect the interests of the other Miners.

118.    Sievertsen retained counsel with significant experience in complex class and collective action litigation.

119.    A class and collective action is superior to other available means for fair and efficient adjudication of this lawsuit.

120.    Absent this class and collective action, many Miners will not obtain redress for their injuries, and Freeport will reap the unjust benefits of violating the FLSA and Colorado law.

121.    Further, even if some of the Miners could afford individual litigation, it would be unduly burdensome to the judicial system.

122.    Indeed, the multiplicity of actions would create a hardship for the Miners, the Court, and Freeport.

123.    Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Miners' claims.

124.    The questions of law and fact that are common to each Miner predominate over any questions affecting solely the individual Miners.

125.    Among the common questions of law and fact are:

a.    Whether Freeport's pre/post shift off the clock policy failed to compensate the Miners for all hours worked.

b.    Whether Freeport's pre/post shift off the clock policy deprived the Miners of overtime when they worked more than 40 hours in a week;

c.    Whether Freeport's pre/post shift off the clock policy deprived the Miners of earned wages on their regular paydays and/or following the termination of their employment;

d.    Whether Freeport failed to authorize and/or permit the Colorado Class Members to take 10-minute rest breaks for every four hours worked or major fraction thereof;

e.    Whether Freeport failed to compensate the Colorado Class Members for missed rest breaks;

f.    Whether Freeport's decision not to pay its Miners all overtime due was made in good faith; and

g.    Whether Freeport's FLSA violations were willful.

126.    Sievertsen knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

127.    Freeport's pre/post shift off the clock policy deprived Sievertsen and the other Miners of wages, including overtime wages, they are owed under federal and Colorado law.

128.    There are many similarly situated Miners who have been denied wages, including overtime wages, in violation of the FLSA and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

129.    The Miners are known to Freeport and can be readily identified and located through Freeport's business and personnel records.

## FREEPORT'S VIOLATIONS WERE WILLFUL
## AND/OR DONE IN RECKLESS DISREGARD OF THE FLSA AND
## COLORADO WAGE LAW

130.    Sievertsen incorporates all other paragraphs by reference.

131.    Freeport knew it was subject to the FLSA's overtime provisions and the CWCA, CMWA, and COMPS Order's overtime, earned wages, and rest break provisions.

132.    Freeport knew the FLSA, CWCA, CMWA, and COMPS Orders required it to pay non-exempt employees, including the Miners, overtime at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

133.    Freeport knew each Miner worked more than 40 hours in at least one workweek during the relevant period.

134.    Freeport knew it paid its Miners according to its pre/post shift off the clock policy.

135.    Freeport knew it had a duty to ensure its Miners were not performing work "off the clock" (without pay).

136.    Freeport knew it required its Miners to don and doff safety gear and protective clothing, gather and store tools and equipment, wash-up, attend meetings, and submit reports "off the clock."

137.    Freeport controlled its Miners' work procedures.

138.    Freeport knew its Miners' mandatory "off the clock" work was a fundamental requirement of their jobs with Freeport.

139.    Freeport knew its Miners' mandatory "off the clock" work was an integral and indispensable requirement of their jobs with Freeport.

140.     Freeport knew its Miners routinely performed this daily, required "off the clock" work for Freeport's predominant benefit.

141.     In other words, Freeport knew its Miners performed compensable work (*e.g.*, donning/doffing their safety gear and protective clothing, gathering and storing tools and equipment, washing-up, attending meetings, and submitting reports) "off the clock."

142.     Freeport knew its pre/post shift off the clock policy failed to compensate the Miners for all hours worked, including overtime hours.

143.     Freeport knew, should have known, or showed reckless disregard for whether its conduct described in this Complaint violated the FLSA, CWCA, CMWA, and/or COMPS Order.

144.     Freeport knowingly, willfully, and/or in reckless disregard carried out its illegal pre/post shift off the clock policy that systematically deprived the Miners of overtime for their hours worked over 40 in a workweek in violation of the FLSA, CWCA, CMWA, and COMPS Order.

### FREEPORT'S VIOLATIONS WERE NOT DONE IN GOOD FAITH

145.     Sievertsen incorporates all other paragraphs by reference.

146.     Freeport did not seek the advice of counsel regarding its pre/post shift off the clock policy.

147.     Freeport did not receive advice from counsel regarding its pre/post shift off the clock policy.

148.     Freeport did not rely on the advice of counsel in deciding to implement its pre/post shift off the clock policy.

149.    Freeport did not investigate whether its pre/post shift off the clock policy compensated its Miners for all hours worked.

150.    Freeport's decision not to pay its Miners overtime was neither reasonable nor made in good faith.

151.    Freeport did not seek the advice of counsel regarding providing rest breaks to the Miners and/or compensating the Miners for missed rest breaks.

152.    Freeport did not receive advice from counsel regarding providing rest breaks to the Miners and/or compensating the Miners for missed rest breaks.

153.     Freeport did not rely on the advice of counsel in failing to provide or make available rest breaks to the Miners and/or compensate the Miners for missed rest breaks.

154.    Freeport did not investigate whether it failed to provide or make available rest breaks to the Miners and/or compensate the Miners for missed rest breaks.

155.    Freeport's decision not to provide or make available rest breaks to the Miners and/or compensate the Miners for missed rest breaks was neither reasonable nor made in good faith.

### COUNT I
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
### (FLSA COLLECTIVE)

156.    Sievertsen incorporates all other paragraphs by reference.

157.    Sievertsen brings his FLSA claim as a collective action on behalf of himself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

158.    Freeport violated, and is violating, the FLSA by employing non-exempt employees (Sievertsen and the other FLSA Collective Members) in a covered enterprise for

workweeks in excess of 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for the hours they worked in excess of 40 in a workweek.

159.    Freeport's unlawful conduct harmed Sievertsen and the other FLSA Collective Members by depriving them of the overtime wages they are owed.

160.    Accordingly, Freeport owes Sievertsen and the other FLSA Collective Members the difference between the rate actually paid and the proper overtime rate.

161.    Because Freeport knew, or showed reckless disregard for whether, its pre/post shift off the clock policy violated the FLSA, Freeport owes Sievertsen and the other FLSA Collective Members these wages for at least the past 3 years.

162.    Freeport is also liable to Sievertsen and the other FLSA Collective Members for an amount equal to all their unpaid wages as liquidated damages.

163.    Finally, Sievertsen and the other FLSA Collective Members are entitled to recover all reasonable attorney's fees and costs incurred in this action.

## COUNT II
### FAILURE TO PAY OVERTIME WAGES UNDER THE CWCA AND COMPS ORDERS (COLORADO CLASS)

164.    Sievertsen incorporates all other paragraphs by reference.

165.    Sievertsen brings his CWCA overtime claim on behalf of himself and the other Miners pursuant to C.R.C.P. 23.

166.    Freeport's conduct violated the CWCA, as implemented by the COMPS Orders. *See* C.R.S. §§ 8-4-101, *et seq.*; 7 C.C.R. 1103-1.

167.    At all relevant times, Freeport was subject to the CWCA and the COMPS Orders because Freeport was (and is) an "employer" within the meaning of the CWCA and COMPS Orders. *See* C.R.S. § 8-4-101(6); 7 C.C.R. 1103-1(1.6).

168.    At all relevant times, Freeport employed Sievertsen and the other Colorado Class Members as its covered "employees" within the meaning of the CWCA and COMPS Orders. *See* C.R.S. § 8-4-101(5); 7 C.C.R. 1103-1(1.5).

169.    The COMPS Orders require employers, like Freeport, to pay non-exempt employees, including Sievertsen and the other Colorado Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay – based on *all* remuneration – for all hours worked over 12 in a workday and 40 in a workweek. *See* 7 C.C.R. 1103-1(4.1.1).

170.    Sievertsen and the other Colorado Class Members are entitled to overtime pay under the COMPS Orders. *See* 7 C.C.R. 1103-1(4.1.1).

171.    Freeport violated the CWCA and COMPS Orders by failing to pay Sievertsen and the other Colorado Class Members overtime wages at rates not less than 1.5 times their regular rates of pay – based on all remuneration received – for all hours worked over 12 in a workday and 40 in a workweek, including hours worked "off the clock" before and after their shifts and for denied "rest breaks," for which Freeport failed to compensate Sievertsen and the other Colorado Class Members. *See* 7 C.C.R. 1103-1(4.1.1 and 5).

172.    Freeport's unlawful conduct harmed Sievertsen and the other Colorado Class Members by depriving them of the required premium overtime wages they are owed.

173.    Accordingly, Sievertsen and the other Colorado Class Members are entitled to recover their unpaid overtime wages and an automatic penalty of the greater of two times the

amount of the unpaid overtime wages or $1,000. *See* C.R.S. § 8-4-109(3)(b)(I); 7 C.C.R. 1103-1(8.1).

174.    Because Freeport's failure to pay these overtime wages was willful, Freeport is also liable to Sievertsen and the other Colorado Class Members for treble damages in the amount of three times their unpaid overtime wages or $3,000, whichever is greater. *See* C.R.S. § 8-4-109(3)(b)(II).

175.    Finally, Sievertsen and the other Colorado Class Members are entitled to recover their reasonable attorneys' fees, costs, and expenses incurred in this action. *See* C.R.S. § 8-4-110; C.C.R. 1103-1(8.1).

<u>**COUNT III**</u>
**FAILURE TO PAY MINIMUM WAGES UNDER THE CMWA AND COMPS ORDERS (COLORADO CLASS)**

176.    Sievertsen incorporates all other paragraphs by reference.

177.    Sievertsen brings his CMWA minimum wages claim on behalf of himself and the other Miners pursuant to FED. R. CIV. P. 23.

178.    Freeport's conduct violated the CMWA, as implemented by the COMPS Orders. *See* 7 C.C.R. 1103-1(1.5).

179.    At all relevant times, Freeport was subject to the CMWA because Freeport was (and is) an "employer" within the meaning of the CMWA. *See* 7 C.C.R. 1103-1(1.6).

180.    At all relevant times, Freeport employed Sievertsen and the other Colorado Class Members as its covered "employees" within the meaning of the CMWA. *See* 7 C.C.R. 1103-1(1.5 and 1.6).

181.    The CMWA and COMPS Orders require employers, like Freeport, to pay employees, including Sievertsen and the other Colorado Class Members, no less than the minimum hourly wage for all hours worked, including overtime pay for hours worked in excess of 40 per workweek and 12 per day. *See* C.R.S. § 8-6-116; 7 C.C.R. 1103-1 (1.9 and 3).

182.    Freeport violated the CMWA and COMPS Order by failing to pay Sievertsen and the other Colorado Class Members minimum wages for all hours worked, including hours worked "off the clock" for missed "rest breaks," for which Freeport failed to compensate Sievertsen and the other Colorado Class Members. *See* 7 C.C.R. 1103-1(4.1.1 and 5).

183.    Freeport's unlawful conduct harmed Sievertsen and the other Colorado Class Members by depriving them of the minimum wages they are owed.

184.    Accordingly, Sievertsen and the other Colorado Class Members are entitled to recover their unpaid minimum wages and interest. *See* C.R.S. § 8-6-118.

185.    Finally, Sievertsen and the other Colorado Class Members are entitled to recover their reasonable attorneys' fees, costs, and expenses incurred in this action. *See* C.R.S. § 8-6-118.

<u>**COUNT IV**</u>
**FAILURE TO PAY EARNED WAGES UNDER THE CWCA AND COMPS ORDERS (COLORADO CLASS)**

186.    Sievertsen incorporates all other paragraphs by reference.

187.    Sievertsen brings his CWCA earned wages claim on behalf of himself and the other Colorado Class Members pursuant to FED. R. CIV. P. 23.

188.    Freeport's conduct violates the CWCA. *See* C.R.S. §§ 8-4-101, *et seq.*

189.    At all relevant times, Freeport was subject to the CWCA because Freeport was (and is) an "employer" within the meaning of the CWCA. *See* C.R.S. § 8-4-101(6).

190.    At all relevant times, Freeport employed Sievertsen and the other Colorado Class Members as its covered "employees" within the meaning of the CWCA. *See* C.R.S. § 8-4-101(5).

191.    The CWCA requires employers, like Freeport, to pay employees, including Sievertsen and the other Colorado Class Members, all wages earned, due, and owing on their regular payday and following termination of their employment. *See* C.R.S. §§ 8-4-103(1)(a) and 8-4-109(1).

192.    Freeport violated the CWCA by failing to pay Sievertsen and the other Colorado Class Members all their wages earned for all the hours of work they performed for Freeport, including overtime wages calculated at the required rate and hours worked "off the clock" before their scheduled shifts and after their scheduled shifts and for "rest breaks" that Freeport failed to permit and/or authorize, for which Freeport failed to compensate Sievertsen and the other Colorado Class Members. *See* C.R.S. §§ 8-4-103(1)(a) and 8-4-109(1); 7 C.C.R. 1103-1(4.1.1, and 5).

193.    Freeport's unlawful conduct harmed Sievertsen and the other Colorado Class Members by depriving them of the earned wages they are owed.

194.    Accordingly, Sievertsen and the other Colorado Class Members are entitled to recover their unpaid earned wages and an automatic penalty in the amount of two times the amount of the unpaid wages or compensation or $1,000, whichever is greater. *See* C.R.S. § 8-4-109(3).

195.    Because Freeport's failure to pay these earned wages was willful, Freeport is also liable to Sievertsen and the other Colorado Class Members for treble damages in the amount of three times their unpaid earned wages or $3,000, whichever is greater. *See* C.R.S. § 8-4-109(b)(II).

196.    Finally, Sievertsen and the other Colorado Class Members are entitled to recover their reasonable attorneys' fees, costs, and expenses incurred in this action. *See* C.R.S. § 8-4-110.

### COUNT V
### CIVIL THEFT OF WAGES
### (COLORADO CLASS)

197.    Sievertsen incorporates all other paragraphs by reference.

198.    Sievertsen brings his civil theft claim on behalf of himself and the other Colorado Class Members pursuant to FED. R. CIV. P. 23.

199.    At all relevant times, Freeport was subject to the CWCA because Freeport was (and is) an "employer" within the meaning of the CWCA. *See* C.R.S. § 8-4-101(6).

200.    At all relevant times, Freeport employed Sievertsen and the other Colorado Class Members as its covered "employees" within the meaning of the CWCA. *See* C.R.S. § 8-4-101(5).

201.    Freeport knew it failed to pay Sievertsen and the other Miners minimum wage and overtime because Freeport knew they performed work for Freeport "off the clock" before and after their scheduled shifts and during "rest breaks" that Freeport failed to authorize and/or permit and for which Freeport failed to compensate Sievertsen and the other Colorado Class Members.

202.    Freeport's knowing failure to pay minimum wage under the CMWA, constitutes theft pursuant to C.R.S. § 18-4-401. *See* C.R.S. § 18-6-116.

203.    As a result, Freeport's failure to pay minimum wage constitutes civil theft pursuant to C.R.S. § 18-4-405.

204.    Accordingly, Sievertsen and the other Colorado Class Members are entitled to the greater of $200 or treble damages. *See* C.R.S. § 18-4-405.

205.    Sievertsen and the other Colorado Class Members are also entitled to attorney's fees, costs, statutory interest, and all other relief deemed appropriate by the Court. *See* C.R.S. § 18-4-405.

### JURY DEMAND

206.    Sievertsen demands a trial by jury on all Counts.

### RELIEF SOUGHT

WHEREFORE, Sievertsen, individually and on behalf of the other Miners, seeks the following relief:

    a.    An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

    b.    An Order designating the Colorado Class as a class action pursuant to FED. R. CIV. P. 23;

    c.    An Order appointing Sievertsen and his counsel to represent the interests of the Colorado Class;

d.     An Order finding Freeport liable to Sievertsen and the other Colorado Class Members for their unpaid minimum wages owed under the CMWA, plus interest;

e.     An Order finding Freeport liable to Sievertsen and the other Colorado Class Members for the unpaid overtime wages owed under the CWCA, an automatic penalty of the greater of two times the amount of the unpaid wages or compensation of $1,000, plus treble damages in the amount of three times their unpaid wages or $3,000, whichever is greater;

f.     A Judgment against Freeport awarding Sievertsen and the Miners all their unpaid wages, including overtime wages, liquidated damages, statutory damages, and any other penalties available under the FLSA, CMWA, and/or CWCA;

g.     An Order awarding attorney's fees, costs, and expenses;

h.     Pre- and post-judgment interest at the highest applicable rates; and

i.     Such other and further relief as may be necessary and appropriate.

1   Dated: July 16, 2024.      Respectfully submitted,

2

     **RANDALL LAW PLLC**

3

     By: _/s/ Samuel R. Randall_

4      Samuel R. Randall (No. 024517)
     4742 North 24th Street, Suite 300

5      Phoenix, Arizona 85016

6      602-328-0262 – Telephone
     602-926-1479 – Facsimile

7      srandall@randallslaw.com

8

9      Michael A. Josephson*
     Andrew W. Dunlap*

10      **JOSEPHSON DUNLAP LLP**
     11 Greenway Plaza, Suite 3050

11      Houston, Texas 77046

12      713-352-1100 – Telephone
     713-352-3300 – Facsimile

13      mjosephson@mybackwages.com
     adunlap@mybackwages.com

14

15      Richard J. (Rex) Burch*
     **BRUCKNER BURCH PLLC**

16      11 Greenway Plaza, Suite 3025
     Houston, Texas 77046

17      713-877-8788 – Telephone

18      rburch@brucknerburch.com

19

     *Pro hac vice applications forthcoming*

20

21      **ATTORNEYS FOR SIEVERTSEN &**
     **THE MINERS**

22

23

24

25

26

27

28